FILED
2019 Mar-26 PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | |
| | } | |
| **MUSTAFAA SAYYED WOODS,** | } | No.: 2:17-cr-00399-MHH-HNJ |
| | } | |
| **Defendant.** | } | |

## **MEMORANDUM OPINION AND ORDER**

Defendant Mustafaa Woods challenges the constitutionality of the search of a rental vehicle that he was operating. The search occurred incident to a traffic stop and produced a firearm, for which Mr. Woods has been charged under 18 U.S.C. § 922(g)(1). (Doc. 1).

Mr. Woods asserts his constitutional challenge on the basis of the Fourth Amendment of the United States Constitution. (Doc. 16, p. 1). At the suppression hearing in this case, counsel for Mr. Woods conceded that following the traffic stop, a search of the vehicle was inevitable for many reasons, among them the fact that a representative of the rental company was coming to retrieve the vehicle and could have given consent to search. Counsel for Mr. Woods explained that Mr. Woods primarily challenges the validity of the stop that led to the vehicle search. Mr. Woods contends that the arresting officer did not have a legitimate basis for

1

the stop and that the officer used a ruse to justify the stop.  (Doc. 25, pp. 3-4, 42-44).

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV.  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Whren v. U.S.*, 517 U.S. 806, 810 (1996).  In his suppression motion, Mr. Woods asks whether a law enforcement officer who wants to question an individual can look for a reason to stop the vehicle in which the individual is travelling, and, if so, how far an officer may go in looking for an opportunity to initiate a stop.

On the day of the incident in question, a Jefferson County sheriff's deputy was investigating a stolen vehicle case when he observed Mr. Woods driving through the parking lot of a motel in a vehicle bearing California plates.  (Doc. 26, pp. 6-9, 17-18).[1]  Based on previous meetings, the deputy and Mr. Woods knew one another.  (Doc. 26, pp. 8, 12, 27).  The deputy knew that detectives in the Sheriff's Office had wanted to talk to Mr. Woods about a recent shooting in Jefferson County (unrelated to the stolen vehicle case), so the deputy decided to "conduct an investigatory stop on Mr. Woods."  (Doc. 26, p. 9; *see also* Doc. 26, p.

---

[1] Since Mr. Woods's arrest, Officer Bradley has joined the Hoover Police Department.  (Doc. 26, p. 5).

19). The deputy stated that he planned to stop Mr. Woods and then contact the detectives to ask if they wanted to speak to Mr. Woods. (Doc. 26, p. 19). When Mr. Woods drove out of the motel parking lot, the deputy left as well and followed Mr. Woods to the interstate. (Doc. 26, p. 9). The deputy testified that up to the point at which he followed Mr. Woods onto the interstate, some two or three blocks from the motel, he did not have a reason to pull Mr. Woods over. (Doc. 26, pp. 19, 22).

The deputy testified that on the interstate, over the course of a mile or two, Mr. Woods committed three infractions of the driving code by changing lanes without signaling, driving above the speed limit, and following other vehicles too closely. (Doc. 26, pp. 10-11). When Mr. Woods exited the interstate, the deputy followed him and initiated his lights. Mr. Woods pulled over. (Doc. 26, pp. 11, 24-25).

During his initial conversation with Mr. Woods, the deputy learned that the vehicle was a rental. (Doc. 26, p. 31). The deputy testified that while he was speaking with Mr. Woods, he detected the odor of marijuana coming from the vehicle. (Doc. 26, pp. 12, 29-30). After obtaining identification from Mr. Woods and his passenger, the deputy returned to his car to check for outstanding warrants, call for backup, and write a warning. (Doc. 26, pp. 13-15, 25, 33). While the deputy was in his patrol car, he contacted the rental company to ask questions

about the rental vehicle. (Doc. 26, pp. 35, 38). A manager at the rental company stated that Mr. Woods was not an authorized operator of the vehicle and that she would send a representative to get the vehicle. (Doc. 26, pp. 35-36, 38). From that point forward, the deputy knew that he was not going to allow Mr. Woods to drive away from the stop. (Doc. 26, p. 38).

After the deputy gave Mr. Woods the warning (for failing to signal and for following too closely but not for speeding), the deputy asked Mr. Woods if there was a firearm in the vehicle. Mr. Woods stated that there was a firearm in the console, so the deputy removed Mr. Woods and his passenger from the car and searched the vehicle. (Doc. 26. pp. 15-16). The deputy found two guns and drugs in the car. (Doc. 26, pp. 16-17). Mr. Woods's passenger claimed one of the guns and the drugs. (Doc. 26, p. 17). The gun in the console is attributed to Mr. Woods, but he contends that the gun belonged to his girlfriend. (Doc. 26, p. 15).

There is no dashcam or bodycam footage of the stop. (Doc. 26, p. 23). The deputy did not tell Mr. Woods about the detectives who supposedly wanted to speak with him (Mr. Woods), and the deputy did not mention to Mr. Woods the odor of marijuana that the deputy supposedly detected when he first walked up to the car. (Doc. 26, pp. 29-30). The purported odor of marijuana is significant because the deputy testified that his detection of the scent of marijuana during his

initial conversation with Mr. Woods gave him a basis for searching the vehicle. (Doc. 26, p. 31).[2]

The United States contends that the deputy stopped Mr. Woods because Mr. Woods committed two traffic violations, and the deputy searched the rental vehicle because Mr. Woods admitted that there was a firearm in the vehicle. Mr. Woods argues that the deputy's testimony about the purported traffic violations is not credible and that the traffic stop was a pretense for an otherwise unauthorized stop. Both parties agree that "there is no valid reason for a police officer to [conduct a traffic] stop just because a detective wants to talk to somebody. There's absolutely no probable cause. There's no reasonable articulable suspicion whatsoever at that point." (Doc. 26, p. 46); *see also* (Doc. 26, pp. 47-48) ("There's no legitimate reason to stop someone for an investigatory [traffic] stop. There's no such thing.").

Supreme Court precedent regarding the driving public establishes a wide berth for police action. *See United States v. Knotts*, 460 U.S. 276, 281 (1983) ("A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."). In *United States v. Jones*, 565 U.S. 400 (2012), the Supreme Court placed limits on *Knotts* in

---

[2] The deputy's testimony about the odor of marijuana is somewhat confusing. Initially, he stated that he smelled marijuana when he first approached Mr. Woods's car. When counsel for Mr. Woods asked the deputy why he bothered to write a warning if he smelled marijuana and knew he could conduct a search on that basis, the deputy stated that he "didn't know [he] was going to search the vehicle initially until I smelled marijuana." (Doc. 26, p. 32; *see also* Doc. 26, p. 36).

5

the context of GPS tracking, but the Supreme Court did not abrogate the general rule announced in *Knotts*. The Supreme Court explained:

> This Court has to date not deviated from the understanding that mere visual observation does not constitute a search. . . . We accordingly held in *Knotts* that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." . . . Thus, even assuming that the concurrence is correct to say that "[t]raditional surveillance" of Jones for a 4–week period "would have required a large team of agents, multiple vehicles, and perhaps aerial assistance," . . . our cases suggest that such visual observation is constitutionally permissible.

*Jones*, 565 U.S. at 412 (internal citations omitted).

In the context of a Fourth Amendment challenge to a search and seizure, an officer's subjective reasons for conducting surveillance and a traffic stop are irrelevant. *Whren*, 517 U.S. at 813. In *Whren*, the Supreme Court held that reasonableness is an objective standard under the Fourth Amendment. *Whren*, 517 U.S. at 813-14. Consequently, the subjective motivation of a particular law enforcement officer is irrelevant to the reasonableness analysis.

In *Whren*, the defendant acknowledged that probable cause existed to stop him for failing to signal a turn. *Whren*, 517 U.S. at 810. When officers pulled the defendant over, the officers saw two large bags of drugs in the car. The defendant argued that the officers were motivated to stop him, not because of a traffic violation, but because they were looking for drugs. The Supreme Court was not persuaded. The Supreme Court stated:

6

> In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), we held that a traffic-violation arrest (of the sort here) would not be rendered invalid by the fact that it was "a mere pretext for a narcotics search," *id.*, at 221, n. 1, 94 S.Ct., at 470, n. 1; and that a lawful postarrest search of the person would not be rendered invalid by the fact that it was not motivated by the officer-safety concern that justifies such searches, *see id.*, at 236, 94 S.Ct., at 477. *See also Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 492, 38 L.Ed.2d 456 (1973).

517 U.S. at 812-13.

The defendants' argument in *Whren* was similar to the argument that Mr. Woods advances here: because "the use of automobiles is so heavily and minutely regulated that total compliance with traffic and safety rules is nearly impossible, a police officer will almost invariably be able to catch any given motorist in a technical violation. This creates the temptation to use traffic stops as a means of investigating other law violations, as to which no probable cause or even articulable suspicion exists." 517 U.S. at 810. That is precisely what the deputy did in this case. He wanted to conduct an investigatory stop. Because he could not do so lawfully while Mr. Woods was driving in the rental car, he looked for a traffic violation so that he would have probable cause to initiate a stop. The Fourth Amendment authorizes such conduct by a law enforcement officer as long as a reasonable officer would have conducted a traffic stop under similar circumstances.

7

Mr. Woods argues that a reasonable officer in the deputy's position would not have had a basis for a traffic stop and that the deputy's testimony reveals that the stop was strategically engineered such that the Court should not credit the deputy's explanations for his conduct. Mr. Woods fairly posits that it is somewhat difficult to follow the logic of the deputy's testimony. For example, Mr. Woods points out that the deputy did not contact the detectives who were investigating a shooting to ask if they still wanted to talk to Mr. Woods. Had the deputy done so, he may have learned that the detectives no longer needed to speak to Mr. Woods (or vice versa). Implicit in Mr. Woods's argument is the proposition that if the detectives did not want to talk to Mr. Woods, then the deputy should not have been following Mr. Woods, waiting for him to commit a traffic violation.

But *Whren* indicates that in the context of a Fourth Amendment challenge to a search, a police officer's intent is irrelevant. If the deputy wanted to follow Mr. Woods simply because he was familiar with Mr. Woods's criminal background, and he wanted an excuse to stop Mr. Woods and question him, then this Court has found nothing in Fourth Amendment precedent would prevent the deputy from following Mr. Woods, waiting for him to violate the rules of the road. It is conceivable that the Supreme Court might place some limit on the amount of time that an officer may follow an individual waiting for the individual to commit a

8

traffic violation, but the minutes that elapsed in this case surely would fall within that limit.

To the extent that Mr. Woods challenges the credibility of the deputy's testimony that Mr. Woods failed to signal when he changed lanes or followed other cars too closely, on the record before the Court, the Court accepts the deputy's testimony concerning those two reported violations. Although the deputy's testimony concerning the events surrounding the stop is somewhat confusing and not entirely credible, the Court has no specific evidence before it to contradict the deputy's testimony about these two traffic violations. Dashcam footage would be helpful if it were available, but dashcams typically begin recording when an officer initiates his lights, so it is unlikely that a dashcam would capture a traffic violation that occurred well before the deputy turned on his lights for the traffic stop.

Likewise, Mr. Woods argues that if the deputy really detected the odor of marijuana when he first spoke to Mr. Woods, then the deputy did not have to go through the pretense of writing a warning because the odor of marijuana supplied grounds for a search of the vehicle. But the deputy testified that when he returned to his patrol car after speaking with Mr. Woods, he not only wrote a warning but he also called for backup and called the rental company. The deputy operated well within his discretion when he made those calls. Once the deputy learned that Mr. Woods was not an authorized operator of the vehicle and that the rental company

was coming to retrieve the vehicle, the other potential rationales for the search – the warning, the odor of marijuana – became superfluous because Mr. Woods was going to have to exit the vehicle. (Doc. 26, p. 38). *See United States v. Vargas*, 848 F.3d 971, 974 (11th Cir. 2017). A reasonable officer in these circumstances would ask about firearms in the vehicle, knowing that a representative of the rental agency was coming to retrieve the car, and Mr. Woods and his passenger would be exiting the vehicle and joining the police outside of the car. The question was pertinent to officer safety and to the safety of the employee of the rental agency. The search of the vehicle following Mr. Woods's acknowledgement of the weapons was lawful.

To the extent that Mr. Woods's challenge may suggest racial or other invidious profiling, such a constitutional challenge rests on the Fourteenth Amendment equal protection clause, not the Fourth Amendment. Mr. Woods has not asserted a constitutional challenge to the stop based on the Fourteenth Amendment.

For the reasons discussed, the Court denies Mr. Woods's motion to suppress.

**DONE** and **ORDERED** this March 26, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE